UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE MARIE McDONNELL,

               Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

               Defendant.

1:19-CV-00133-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12).

Plaintiff Michelle Marie McDonnell ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 8) is granted and defendant's motion (Dkt. No. 10) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed an application for DIB benefits on June 10, 2015 alleging disability since October 24, 2013, due to lupus, osteoarthritis, obesity, carpal tunnel

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

syndrome, and ruptured Achilles tendon. (*See* Tr. 21, 90).[2] Plaintiff's disability benefits application was initially denied on September 23, 2015. (Tr. 89, 90-99, 107-118). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Stephen Cordovani on February 1, 2018. (Tr. 18-41, 45-88). ALJ Cordovani heard testimony from plaintiff, who was represented by counsel, as well as from Lanell Hall, an impartial vocational expert. (Tr. 45-88). On March 21, 2018, ALJ Cordovani issued a decision that plaintiff was not disabled under the Act. (Tr. 18-41). Plaintiff timely sought review of the decision by the Appeals Council. (Tr. 176-177). Plaintiff's request for review of the decision was denied by the Appeals Council on November 27, 2018. (Tr. 1-6). The ALJ's March 21, 2018 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on April 26, 1966, plaintiff was 47 years old on the alleged disability onset date and 51 years old on the date of the hearing. (Tr. 34, 51). Plaintiff is able to communicate in English, has at least a high school education, and had past relevant work as a rural mail carrier, administrative clerk, and school bus monitor. (Tr. 34).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic

---

[2] References to "Tr." are to the administrative record in this case.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.  *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner may find the

3

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* § 404.1520(b); 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* § 404.1520(c); 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the

4

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* § 404.1520(d); 416.920(c). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* § 404.1520(e); 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* § 404.1545(a)(1); 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f); 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* § 404.1520(g)(1); 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through June 30, 2018. (Tr. 23). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since October 24, 2013 the alleged onset date. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) obesity; (2) osteoarthritis of the bilateral knees; (3) osteoarthritis of the low back and SI joints; (4) history of ruptured left Achilles tendon; (5) bilateral tendonitis tibialis; and (6) lupus.[3] (Tr. 23-24). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 25). Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> [T]he [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the [plaintiff] can occasionally climb ramps and stairs, balance and bend but never kneel, crouch, crawl or climb ladders, ropes or scaffolds. The [plaintiff] can never work at unprotected heights or on uneven ground. The [plaintiff] can never perform overhead work or be exposed to extreme heat or cold. The [plaintiff] would be absent from work less than eight days per year.

(Tr. 26).

---

[3] Also at step two, the ALJ observed that plaintiff's dysuria, hypertension, hypopotassemia, and thoracic sprains are non-severe medical conditions with no more than minimal effect on her ability to perform basic work activities. (Tr. 24). With regard to plaintiff's allegations of carpal tunnel syndrome and depression, the ALJ concluded that these conditions are non-medically determinable. (*Id.*). The decision notes that the ALJ did consider and accommodate plaintiff's severe and non-severe impairments, as well as her chronic complaints of pain, in formulating the RFC. (*Id.*).

Proceeding to step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. (Tr. 34). Proceeding to step five, and after considering testimony from Vocational Expert ("VE") Hall in addition to plaintiff's age, work experience and RFC, for the period from the alleged onset date until her birthday on April 25, 2016, when she changed age categories, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as order clerk, document preparer, and touch-up screener. (Tr. 34-35). The ALJ also found, based on the VE's testimony, that claimant had acquired work skills from past relevant work making her able to perform jobs such as payroll clerk and data entry clerk, which are semi-skilled in nature (Specific Vocational Preparation ("SVP") code of 4) and fitting her RFC. (Tr. 35-36). As of April 25, 2016, when plaintiff changed age categories, the ALJ considered plaintiff's age, education, work experience, and RFC, to conclude that plaintiff's acquired work skills were transferable to other occupations with jobs existing in significant numbers in the national economy, as specified above by the vocational expert. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from October 24, 2013, the alleged onset date, through March 21, 2018, the date of the decision. (Tr. 36).

IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred in relying on an overly vague consulting opinion of Dr. Samuel Balderman and discounting all the treating source opinions in this case. (*See* Dkt. No. 8-1 (Plaintiff's Memo of Law)). Dr. Balderman provided a medical source statement opining that plaintiff had "[m]oderate limitation to sustained physical activities mainly due to poor weight control." (Tr. 426). Plaintiff argues that this opinion lacks explanation and is not stated in functional terms relating to specific physical limitations.

7

For the reasons that follow, the Court finds that the ALJ did err in his reliance on Dr. Balderman's opinion without seeking clarification of the opinion to support a function-by-function analysis of plaintiff's exertional and non-exertional capacities.

Plaintiff testified that she has physical impairments and experiences chronic pain, fatigue, limitations of mobility, sleep disruption, brain fog, weakness, numbness, and swelling caused by osteoarthritis, obesity, lupus, and left ankle tendonitis and tendon rupture, all of which impair her ability to work. (Tr. 26-27, 54-81). Plaintiff underwent surgery for Achilles tendon repair in November 2013. (Tr. 357-389). Plaintiff reported difficulty with lifting, squatting, bending, standing, reaching, using hands, walking, sitting kneeling, and climbing. (Tr. 27).

The ALJ is responsible for assessing a claimant's residual functional capacity based on all relevant medical and other evidence. 20 C.F.R. § 404.1545; 1546(c). In determining RFC, the ALJ must consider objective medical evidence and medical source opinions, as well as nonmedical information and claimant's own statements about the intensity, persistence, and limiting effects of symptoms. *Id.* § 404.1545; SSR 16-3p, 2016 SSR LEXIS 4 (S.S.A. Mar. 16, 2016). Medical opinions are statements from acceptable medical sources about what a claimant can do despite his or her impairments and whether a claimant has impairment-related limitations on his or her ability to perform physical, mental, or other demands of work and adapt to environmental conditions. *See* 20 C.F.R. 404.1513(a)(2); 404.1527(a). A treating physician's opinion as to the nature and severity of a plaintiff's impairments will be given "controlling weight" so long as the opinion is "well-supported by medically acceptable…techniques and [is] not inconsistent with the other substantial evidence in [the record]." *See Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). If an ALJ

8

declines to give a treating physician's opinion controlling weight, the ALJ must consider a number of factors to determine how much weight to assign to the treating physician's opinion, specifically: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Elder v. Comm'r Soc. Sec.*, 2017 U.S. Dist. LEXIS 44418, *30 (E.D.N.Y. Mar. 24, 2017) (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

The ALJ reviewed opinion evidence from several treatment providers and consulting examiners about plaintiff's physical impairments.[4] (Tr. 31-34). The opinion evidence included two opinions of Dr. Marc Bergeron, who conducted an independent medical examination of plaintiff in 2014 for workers' compensation purposes related to plaintiff's left ankle injury. (Tr. 454-460, 481-492). On June 5, 2014, Dr. Bergeron assessed the following work restrictions: "[plaintiff] should be allowed to sit, stand and walk as tolerated, no stand or walk in combination for more than approximately 35-40 minutes per hour. No push, pull, lift, or carry more than approximately 25 lbs. occasionally, 12 lbs. frequently, and 3-5 lbs. continuously and minimize prolonged continuous activity if it involves standing or walking." (Tr. 484). The ALJ gave some weight to Dr. Bergeron's opinions that "plaintiff had varying degrees of disability, including temporary, partial and moderate as well as mild and moderate at 40% for the Achilles tendon diagnosis." (Tr. 32). The ALJ's explanation for the reduced weight given was that Dr. Bergeron's opinions were based on minimal personal evaluations during an acute post-operative phase,

---

[4] The ALJ also reviewed opinion evidence from consultative psychologists G. Kleinerman and Janine Ippolito who both concluded that plaintiff's mental impairments were non-severe. Plaintiff does not challenge the ALJ's findings relevant to her mental impairments.

9

therefore they were not an accurate depiction of plaintiff's overall functional abilities after recovery from Achilles tendon repair. (*Id.*).

On August 20, 2015, Dr. Balderman performed a consultative examination and provided a medical source statement which were considered by the ALJ. (Tr. 26-34, 424-427). The examination report includes observations of plaintiff's height, weight, and general appearance, as well as normal gait without use of assistive devices, ability to squat at 30% of normal, some difficulty walking on heels and toes, full range of motion in knees without instability, tenderness, or neurological deficits, no spinal abnormality, normal range of motion and rotary movement in spine, and no focal neurological deficits. (*Id.*). His report notes that lumber spine x-rays showed degenerative changes in sacroiliac joints and small degenerative spurs. (*Id.*). Dr. Balderman's brief medical source statement opined that the plaintiff has "[m]oderate limitation to sustained physical activities mainly due to poor weight control." (Tr. 426). The ALJ afforded this opinion great weight because it was consistent with the clinical findings upon examination, including musculoskeletal examination results. (Tr. 31). The ALJ acknowledged that Dr. Balderman's opinion is "somewhat vague and conclusory," and does not reflect subsequent evidence received at hearing level showing that plaintiff has osteoarthritis of the bilateral knees. (*Id.*).

The ALJ gave little weight to opinions rendered by plaintiff's physical therapist, Justin Moyer, and nurse practitioner, Evelyn Oullette, explaining that neither provider is an acceptable medical source under the Commissioner's Regulations. (Tr. 31-32). He further noted that Moyer's opinion is vague, not expressed in vocationally relevant terms, and was rendered with intent to be temporary during her course of recovery. (*Id.*). Oullette opined that plaintiff was capable of significantly decreased range of sedentary exertion with additional walking, sitting, and standing limitations, as well as need for leg elevations,

use of a cane, unscheduled breaks every hour, and avoidance of temperature extremes. (Tr. 615-618). In addition to being a non-acceptable source, the ALJ felt that her opinion was "internally inconsistent in limitations noted, as well as not consistent with the claimant's wide-range of activities of daily living […]." (Tr. 32).

Lastly, the ALJ received several opinions of Dr. Puneet Chahal, who provided podiatric treatment for plaintiff's work-related Achilles tendon injury. (Tr. 356-389, 529-533, 543-586). Dr. Chahal opined that plaintiff was not able to return to her regular job and that, as of May 2016, she had "reached maximum medical improvement and will never be 100% and will have chronic issues with this left heel." (Tr. 585). The opinions of Dr. Chahal were given little weight by the ALJ because they "were rendered with intent to be temporary, during the regular course of her treatment for pain management and recovery post-surgery," they utilized different standards in the worker's compensation context than required by the Social Security Regulations, they did not provide specific function-by-function limitations to plaintiff's ability to perform work-related activities, and they were not supported by the longitudinal correlating clinical findings. (Tr. 32).

As an initial matter, the Court agrees with the Commissioner that the ALJ properly weighed the opinion evidence before him. The ALJ gave good reasons for not crediting the opinion of Dr. Chahal, plaintiff's treating physician. *See Sanders v. Comm'r Soc. Sec.*, 506 Fed. Appx. 74, 77-78 (2d Cir. 2012); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004). Further, the ALJ acted properly in considering but not affording controlling weight to the opinions of plaintiff's other treating, but non-acceptable medical sources. *See* 20 C.F.R. 404.1527(f); *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008).

The error here arises not in the ALJ's decision to discredit the opinions of consulting physician Bergeron and all other treating sources, but in his reliance on the

vague medical source statement of Dr. Balderman to formulate plaintiff's RFC. An ALJ's RFC assessment must identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the exertional functions in paragraph (b) of 20 CFR 404.1545, i.e. "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." *See* SSR No. 96-8p, 1996 SSR LEXIS 5 (S.S.A. July 2, 1996).

Here, Dr. Balderman's statement failed to provide a function-by-function breakdown of the plaintiff's exertional limitations. *See Hurley v. Colvin*, 2018 U.S. Dist. LEXIS 40156, *10-11 (W.D.N.Y. Mar. 12, 2018) (holding that the Court cannot determine if doctor's opinion is consistent with the RFC where the opinion is ambiguous and vague and does not quantify limitations based on the seven primary exertional activities). Instead, Dr. Balderman grouped all functions together as "physical activities" without further explanation. Further, the doctor's opinion described this generalized limitation only as "moderate" in nature. The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff can perform the exertional requirements of sedentary work. *Tolhurst v. Comm'r Soc. Sec.*, 2016 U.S. Dist. LEXIS 59108, *14 (N.D.N.Y. May 4, 2016) (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds)); *see also Moe v. Colvin*, 2017 U.S. Dist. LEXIS 205907, *16-18 (W.D.N.Y. Dec. 14, 2017) (collecting cases). Thus, Dr. Balderman's conclusion that plaintiff was "moderately" limited in her ability to perform physical activities was too vague and conclusory to provide the ALJ with substantial evidence on which to

base his RFC determination. Remand is required for clarification of Dr. Balderman's opinion or to obtain a more specific function-by-function assessment of plaintiff's physical abilities and limitations.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:     June  /2 , 2020
           Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

13